v. CMHA et al. Oral argument not to exceed 15 minutes per side. Mr. Funk for the appellate. Good morning. Now take your time. Take your time. Okay. Mr. Funk. Thank you, Your Honor. May it please the court, Stephen Funk of Ritzland-Andrus, on behalf of Officer Abdul-Ali, I'd like to reserve three minutes of my time for rebuttal. This appeal involves a denial of qualified immunity to a police officer at the Cuyahoga Metropolitan Housing Authority with respect to the use of a taser. And in this appeal, we are arguing that the district court applied the wrong legal standard in denying qualified immunity to Officer Ali, and we're asking this court to reverse the denial of qualified immunity as a matter of law. Now, the hardest question, I assume you would agree, not that it's not unanswerable, but the hardest question has to be when he's handcuffed and he's still getting tased, which, you know, I think that's fair to say those are fair inferences from Saunders' testimony. So how do you deal with that? Well, Your Honor, I think this court has on multiple occasions said that the mere fact that you're handcuffed by itself did not necessarily mean that you are no longer resisting and… How about when he says stop? What do I need to do? Tell him to stop? It seems like he's completely submitting at that point and saying just how do I get this to stop? Well, that really goes to the heart of what I'm going to be arguing here, which is that in determining qualified immunity under the second part of the test, the district court applied the wrong standard because what you should be focusing on is not the intent of the suspect, but more in terms of would it have been apparent to Officer Ali, who was essentially assisting, Officer Reynolds was the one that was primarily involved in bringing the suspect under control, would it have been obvious to a reasonable officer in Officer Ali's position that he was no longer resisting arrest and that he was now fully complying with officer commands? Well, Ali would know he was handcuffed. Well, I don't know if that… The question isn't what Ali admits. The question is whether a reasonable officer would notice that handcuffs were put on. That seems to me… are you debating that? Well… Because, I mean, that is just an inference point, but I thought that inference was pretty easy. What am I missing? Well, there is, and again, I'm taking it, of course, the officers say that he was not handcuffed, but taking the facts in the light of what's favorable to the plaintiff, the plaintiff himself even talked about the fact that he was re-cuffed in the hallway, so it's not really clear to the officer necessarily what the position was. What we do have is the video evidence in which the officers are clearly struggling with him in some fashion, and the officer at the very end of that videotape yells in a very loud voice, head down, hands down, so clearly, even if he's handcuffed, he's still moving his hands, he's still attempting to get up. These are all things that would, to a reasonable officer, would indicate that the suspect was not, was still struggling and was not fully complying with the officer commands. How many times did he tase him? Well, there is a report. What, 12? I think the allegation with respect to in the hallway was three times in the hallway. Okay, but overall, how many times did that taser involve? Well, yeah, the taser, it's actually unclear. There's a taser report in the record. The reason why I say it's unclear is because there's a number of times where it sort of loops, and so the number, I think, is not definitive in any certain amount. His testimony was that there was one fire that hit him in the back that had no effect, and that it was then three times while he was in the hallway. It might be some evidence of excessiveness, right? Because if you just hit him one time to stop him, that's one thing, but he tased him where, on the floor, and tried to do it in the back, and sometimes that's taser. And I think that really goes to the heart of what we're arguing, which is that under the case law, would it have been clear to a reasonable officer that the suspect had ceased all resistance? Because at that point, it's not excessive. It is, in fact, under the law, you're allowed to use taser if the suspect is continuing to resist. It's only, under a clearly established standard, it's only if it were to be a completely gratuitous use of the taser when the suspect had ceased all resistance and was now fully compliant with the officer's commands. And that's what this court held in the Goodwin case, which was actually decided after this particular use of the taser. But here we have two instances that are really the subject of the district court's opinion. The first one is the one where it hits him in the back that had no effect. And on that question, it really – the suspect was simply turning and leaving the apartment. He admitted that in his deposition that he was told to come here and take his hands out of his pockets. One oddity of this case is it's a – we all agree it's a totality test, right? And so when you're comparing this case to other cases, one oddity of this case is that very early on it's apparent that he works there. In other words, this is not somebody who you – the police have to worry about who's violated the law and is going to, quote, get away. This is where he works. There's no problem here of coming back to this person. So that, I must say, from the beginning of the case is very odd when you think about what Officer Ali did. Yeah, but I don't know that Officer Ali would have known that because ultimately – He says that when he comes in. He asked for his ID, and that was ultimately the ultimate resistance at the beginning was that he refused to produce his ID. He was asked – he says he works there. That's his – But Officer Ali then asked for his ID. That's the whole thing. He didn't – he wanted to verify who he was. But the plaintiff claims that he tried to get his ID out, and the officer pushed him off at first. Well, he was looking – Should we take his evidence as the evidence most favorable to the plaintiff? Well, the testimony was that he was looking at the other person's ID and said I'll get – we're doing a check on that person, then I'll get to yours. But to me, the key – there's really two key material undisputed facts that I think turn the whole qualified immunity analysis. And that is the moment when the first taser is used, it's undisputed that he was told to take his hands out of his pockets and to come here. And instead, he walked out the apartment. So just so we're clear, I think you think that that means you can tase people whenever you want? That's not the law. Well, I think – Consensual encounters are consensual encounters. The police aren't allowed to tase people when they decide they don't want to have the encounter. Right. Well, Your Honor, I'm following the – I'm arguing based upon the Thomas versus City of East Point case whether it was clearly established that an officer in response to a suspect – Which one is that? Is that the jaywalking case or is that the – It's a case that involved a driving where they come out of the car and the officers give a command. The suspect turns around and walks away. But was there an underlying violation? Were they speeding? Was there some criminal law violation is what I'm asking. I don't – I have to go back and look at that case. Well, that seems relevant. There's no evidence he'd done anything wrong. But the key thing, though, in terms of the court's legal analysis was they said that we have not held – and this was in October of 2017. The Sixth Circuit has not held that a suspect – the use of a taser in response to a suspect who refuses to comply with an officer command and instead turns and walks away, which is in flight – which they recently construed as being in flight, that it would be unconstitutional to use a taser in that instance. They didn't get into all the various facts. They were focusing on – That comes back to my flight plan. On the law. Flee the place from which you work. Well, he's fleeing from the officer. And then with respect to the pepper spray in the hallway, it's undisputed –  that he was running down the hallway knocking on doors within the hallway and trying to get into other apartments. Is there significance as to what the officer thought the plaintiff was trying to do or doing? Because he never did violate the law to speak of except maybe disorderly conduct, right? Well, and then I think the key thing was he was refusing to take his hands out of his pockets. I mean, they were trying to verify from a safety standpoint who this person is. Does he have any weapons? Do you think that justifies an officer's use of a taser if a person doesn't take his hands out of his pockets? I mean, he thinks he looks like somebody who's a suspect. No, that's not my position, Your Honor. I'm going at it from the perspective of would it have been clearer to an officer under the existing case law at the time of the use of force, which was in October 2014, that it was clearly established that he could not use a taser in response to a noncompliant suspect who turns and flees in response to a police command. And on that question, this court held in Thomas, that that was not clearly established. Do we have to address that question? So you're not going to like this question, but just hypothetically, I think it's a tribal issue of fact on excessive force when it comes to when Saunders is on the ground and he's handcuffed. Let's just say that's my view, and I'm speaking only for myself, but let's just say hypothetically that's my view. If that goes to a jury, why do I have to segment this into three different claims? I think he brought just one claim of excessive force. If that goes, it's not as if we wouldn't allow the jury to hear the whole thing. There weren't really any damages from the initial tasering. He didn't even notice it. So do I have to even address this question? I know that you disagree with this, but if one takes the view there's a tribal issue of fact that once he's handcuffed, you can't keep tasering him. Do I have to address whether the actions before that are excessive force? Why do I have to do that? Well, because I think that in each instance in which you use force, in fact I think this even happens with respect to the taser, which goes back to Judge Seiler's question about the number of times. For example, the first use of the taser may be permissible, but the second one isn't if I'm talking hypothetically, if the suspect had ceased all resistance. What we're talking about here is with respect to the first use of the taser, the question is would an officer in that position reasonably would have known. But you're saying I have to address that even if I think the last part of it goes to trial and the plaintiff only brought one count on this. I mean it's just one count. So I have to segment something the complaint doesn't segment? I think so because legally under the analysis the officer is entitled to qualify immunity if under the legal standard it would not have been apparent or obvious to that officer that the use of the taser was unconstitutional. I just want to make sure you understand my question. No, I do understand your question. In other words, I'm saying you're right as to the first thing. Maybe I'll say you're right as to the second thing, but I'm saying you're wrong when it comes to trial issue of fact. It's not as if that third one goes to trial, that other evidence isn't going to be brought in anyway. It's always going to be brought in, even if you were right as to the initial encounter. But qualify immunity is really something that to really vindicate it needs to be heard on appeal at this point in time, and so I think if he's entitled to qualify immunity with respect to that first use of the taser, this court needs to declare that, and that is clear as a matter of law. It's not a separate count. It doesn't matter if it's a separate count. It just matters whether or not the officer would be entitled to use. Is this the way it would go to the jury? You'd divide it up into three questions for the jury? Liability? I would be arguing that if I was in trial. I mean, ultimately, that's really the point is the court did that. The district court did that in this case. The problem was the district court didn't apply the proper legal standard. What the trial court did was it essentially assumed that if a reasonable jury could find that he was actively resisting arrest, that's enough, and not actively resisting arrest, that's enough. And the question isn't was he in fact resisting arrest. The question is would it have been apparent to the officer in the officer's position. When I say apparent, clearly obvious that he was no longer resisting arrest and was complying with the officer's commands. And in this situation where you've got undisputed video evidence, and the suspect or Mr. Saunders admits this in his deposition, that the officers were still having to yell, head down, hands down, that would indicate to the officer and it would be reasonable for an officer in that position to believe that he was still resisting. I'm getting confused because I thought what you were talking about a second ago was the first use of the taser, but that's not what you're talking about. Well, at this moment I was shifting to address Judge Sutton's point that I believe the second use of the taser was that he's also entitled to qualify immunity on that question. And I think the same argument applies to both because in both instances, the district court should have looked at it from the officer's perspective in terms of whether it would have been clear or apparent under the existing case law that that specific use of force would be unconstitutional. And that's what the district court didn't do. It conflated the two tests, the first and the second part, which the Supreme Court has time and time again said the courts cannot do that. It's not a question of whether you have the right to be free from the use of excessive force. It's whether an officer in that position would have known, clearly known, that the use of force was unconstitutional. And we submit on both of those questions that Officer Ali would be entitled to qualify immunity. And what if the jury concluded that it was Officer Ali that kept escalating the situation and that the plaintiff tried to comply, tried to offer his license, tried to reason with the officer and was at the door because he feared what was going to happen to him? Well, again, I think it's an objective standard. So the question is would a reasonable officer – so it doesn't even turn on Officer Ali's subjective intent or the suspect's objective intent. It's whether a reasonable officer in Officer Ali's position would have clearly known that the suspect was no longer resisting arrest and was intending to or was complying with the officer's commands, actually complying. And in this situation where you have an officer yelling in a loud voice, head down, hands down, that would suggest to any reasonable officer that they were – I wasn't asking you about that. I was asking you about the first use of the taser. Oh, in the room. Okay. In that situation, same standard. The question is would an officer in that position reasonably believe that the use of force was unconstitutional? And when you have a case, Thomas v. City of East Point, that says that it's not clearly established to use a taser in response to a suspect in flight who ignores an officer's command, then we believe that Officer Ali would be entitled to qualify immunity on that question. So I'll reserve the rest of my time for rebuttal. Thank you. Thank you. All right, Ms. Schuster. Thank you. Thank you, Judge Seiler, Judge Sutton, Judge White. I sometimes wonder where information comes from. But on the subject of the last event first, I have to say that every time I watch that film, I want to cry. I wouldn't call it the clearest video. Well, Your Honor, the talking in the video is as follows. Officer 1, you got him cuffed? Saunders. You got me cuffed? Officer 2, from the front. Officer 1, you got him cuffed? Saunders. Again, you got me cuffed? Officer 2, yeah. The next thing you hear is, Saunders, stop it, man, please. Officer 2, all right, all right, back up, relax. Saunders, please tell him to stop it. And if you listen real hard, you can hear some taser clicks right about there. And then you hear, roll over on your side facing me. Roll over. Which way, left or right? I mean, how it could be said. Let's say you're right about this, that that's a triable issue of fact. Do we have to deal with whether the, we'll say there's three incidents here, the initial one, the pepper spray, and this. Do we have to deal with the first two if there's a triable issue of fact as to this point? I mean, there's one count in the complaint. It seems like the damages wouldn't, well, just tell me the answer. Would we have to deal with that? Judge Oliver thought so because Judge Oliver broke it into three segments. I think that the Sixth Circuit law kind of commands us to deal with it in segments. But I think if we do deal with it in segments, it gets worse for Officer Ali, not better. Well, no, no, no, no. You're not going to say the easiest part of the case from your perspective is the initial part when he's admitted to disorderly conduct? I don't think you can say that. Your Honor, I think I can because of what you wrote, actually, I believe, in a case which happened in Painesville, Smith v. Painesville. I'm always interested in hearing what I wrote, but I also am even more interested in making sure lawyers understand the question I'm asking. Yes. Are you honestly saying the easiest part of this case is the initial encounter? I'm not saying that. I'm saying when he's handcuffed and is still getting tased, which is how you started, I'm trying to figure out how much more to listen to you. I can't believe that the first part is the easiest case for you. I think the first part is easy for this reason. There was nothing happening. Actually, when Officer Ali came to the door on a loud music complaint and there was no loud music, he should have left right then. But instead, for reasons unknown, he knocked on the door. But he's letting the door, he's letting the room. Yes, he was, Your Honor. He could have asked him what their names were, couldn't he? Well, he could have, but he didn't. Make sure they were properly in that apartment. They were absolutely properly in the apartment. Mr. Saunders was the live-in custodian, which is why he was able to go into Hoover Wilson's apartment and wash his face. He actually knew everybody, almost, in that building. And he is a journeyman carpenter. He took that job after growing up in CMHA housing without ever being charged with anything other than a traffic offense. But, I mean, we have a disorderly conduct plea of guilty.  Why doesn't that at least show the first incident fits within clearly established, even if you might be right that the law of the circuit should be you can't tase someone just for walking away. I mean, even if that is the better reading of what the law should be, we have this Thomas case and, in a way, this seems harder because he's admitted to disorderly conduct. I don't think it's harder because, first of all, disorderly conduct, the statute which he admitted to, involves simply saying something that somebody doesn't like. If he said something that Ali didn't like, that would not, I don't think, give Ali the right to turn around and taser him. What's your best case that you're relying upon? And just to show it's clearly established, Smith v. Stoneburner and Aldrich v. the City of Warren. Both of those cases occurred in 2013. This happened in 2014 in January. So, on the key question of the Thomas question, what do those cases say that's different from Thomas? Because Thomas seems to say you can tase, it's not clearly established whether you can tase somebody who refuses to obey an order and leaves. In Thomas, Thomas didn't refuse to obey and leave. It's not the same situation at all. There is no comparison. Saunders was in his own workplace. He saw that the individual who happened to be a police officer seemed, for some reason, to be getting aggressive and bent out of shape. He did what he should have done, which is turn around and walk out the door. This is a helpful question, just so you realize. Yeah, I know that, Your Honor. Is it fair to call Thomas an escape-type case? In other words, a fear that he was going to escape? Is that how you're thinking of it? Whereas that's not what's going on here? Well, that is how I think of Thomas. Thomas was, in fact, fleeing. He was running away from the officer, and the officer was chasing him. That is different from this case where the victim, plaintiff, uses good judgment and decides he's just going to turn around and walk out the door. He knows the building. He walks out the door. He walks into the hall. The officer chases him, follows him into the hall. Actually, I brought, but don't have time to give it to you, the portions of the transcript of his deposition where, for instance, he's asked if Officer Ali gave him any commands. He says no. If the defendants want to say that Mr. Saunders didn't take his hands out of his pockets, they're arguing with the evidence.  He was leaning against the wall. He put his hands back in his pockets. He was looking down. He looked up to see the officer cracking his knuckles, making faces, and suddenly holding a taser. When he sees him holding the taser, he turns around to go out the door. He is hit by a taser in the back. That's the first of 13 taser shots, Your Honor, 13. And these were not overlapping shots. There is a chart in the record, which we provided to the record, which shows each shot. Remind me what the damages theory is. So were there some injuries from this, or is it more kind of the emotional, et cetera? Right. He was physically scarred but not permanently injured, certainly, and not killed, thank God. So scarred from the taser shots? Yes, from the taser shots. And don't forget, what's happening in the film, when you hear him groan very loudly towards the end of the film, he is being drive-stunned up under his jacket by Officer Ali. So the taser is on his back, and he is lying down, face down on the floor. You can see Ali over him, and that is what's happening at the end of the film, when you hear him cry out, ah! What is it that he did that led to the admission of disorderly conduct? Because, I mean, when you read his deposition here, you're not seeing anything that amounts to disorderly conduct.  No, Your Honor, there isn't. Actually, it was a plea without facts, given the court agreed to simply take a plea to end the case, partly so that we could move on with this case. If you recall, CMHA so overreacted to this, I think to protect Officer Ali, but that's another. He was charged with burglary. He was charged with a burglary for entering Hoover Wilson's apartment. That case, that charge, was knollied before trial. He was charged with assault on a police officer. That charge he was acquitted of. He was charged with obstruction of official business. That charge was reversed on appeal and was pending retrial when it was suggested by the prosecution that if he would plead guilty to the disorderly, there would be no facts given. He would not be pleading to the happening of any real facts. So it was a plea agreement. Yes. And he pleaded guilty to the charge of disorderly conduct. Correct. That's correct. And by the time this case is tried, hopefully that charge will be expunged. I shouldn't say that. So to finish this, I, you know, the argument about what might have been clearly established, but I think we have two cases that, at least two cases, that show it's clearly established. There aren't a lot of cases in which... Is there Smith and Eldridge cases? Yes. Okay. And there aren't a lot of cases. I think there's no argument about the fact that it was clearly established at the time that you don't keep tasering somebody who is compliant and subdued. So the only argument that is being made by defendant is an argument that it was not clearly established that he could turn around and leave the apartment and walk into the hall. And I think that Smith and Eldridge show that it was. But in any case, this is a situation where, of course, there aren't a lot of cases. There aren't a lot of instances where a police officer just loses it and starts tasering somebody who isn't doing anything. In a situation where there's nothing being investigated, there was no crime, there was no claim that Mr. Saunders was a danger, no claim that anybody thought he was armed, no claim that he was ever told he was under arrest until after, at the very end, they stand him up in the hall and then they recuff him from the front to the back when EMS comes and they take him away to the hospital. When did this other officer come on the scene? Officer Ali had been. We have all in the record also all the radio calls. Officer Ali called dispatch and asked for help. When he was going down the hall with a taser in one hand and his pepper spray in the other hand, and when you watch the film you will see that somebody is pointing, that happens to be Hoover Wilson, saying pepper spray on the wall. This before or after he attempted to use his taser? So what happens is when they're standing there waiting for a supervisor, Ali gets angry, he pulls out his taser, Jeffrey turns around to open the door and walk out the door, bang, first taser shot. Jeffrey then is walking down the hall with Ali behind him shooting pepper spray and tasers and the taser thing shows that about eight taser shots as they're going down the hall. Hoover Wilson is standing outside of his apartment door, which is in a little alcove, and Jeffrey goes in there, Ali wants to come in, Hoover says let the boy wash his face. Mr. Saunders is standing at the sink in Hoover Wilson's apartment, he can see Ali at the door because the kitchen is right after the door, and then he sees two more officers come. They come in, he holds out his hands, they handcuff him in front, they pick him up pretty much, carry him out, lay him in the alcove face down, and that is when Mr. Ali comes up, gets down on his knee, you can see him. Tell me something since you've tried these cases, how this would work. So both of you and Judge Oliver thought we really should segment this into three phases, figure out clearly established in each phase. Theoretically, let's say you lost on the first two. I'm just curious how this would work at trial. So theoretically we say what Officer Ali did initially and in the hallway did not violate clearly established standards, and the only triable issue of fact is whether what happened at the end violated them. So of course at the trial, evidence will be put on of the whole sequence, the whole event. Would the jury then be instructed that the initial encounter didn't violate clearly established law, the second encounter didn't violate clearly established law, and the only question for you is whether it violated clearly established law at the end? Is that how this would work if we did it the way you're saying? And hypothetically, I know this isn't what you want, but hypothetically he didn't violate clearly established law with the first two segments. Am I getting right how this would work? I think the way it would work is that if I were prosecuting the case, if I were defendant, I would ask for an exclusion. I would say the court's ruled that these things were fine that he did. I would either ask that it be excluded, the evidence, or that there be a jury instruction that the court found that those actions were just fine. And I think it would be precedent. We would then have law in the Sixth Circuit that you can be doing absolutely the right thing, minding your own business in your own building, and be tasered for no reason. But we have the option of saying it does violate the Fourth Amendment, it just wasn't clearly established. So that would establish precedent that you can't do it again. Well, you probably do have that option, but I think the cases show that in each instance it was clearly established. And I think that there are things that are so obviously, obviously, to a reasonable officer off bounds in terms of force that there don't have to be any cases. All right. All right, that would make our job easier. Mr. Funk, you have your rebuttal. Thank you, Your Honor. Briefly, I did have the opportunity to look at the Thomas case, and that actually was a similar case in that it involved a call about a domestic disturbance. And they came and the people were outside, so there wasn't an inside the home situation, and the officers believed that they had been fighting and then it was precipitating to give them commands to get on the ground, and then instead of basically ignored the commands and turned and walked away. In fact, from a legal standpoint. Walked or ran? Walked. From a legal standpoint, the court actually struggled because they said, okay, is it just walking away? Is that sufficient? And the court said, we reasonably construe that to be in flight, and we've never held as a circuit that it is unconstitutional to use a taser in response to a suspect who doesn't comply with the command and turns and walks away. That was decided in October 2017. This use of force was in October 2014. So I think I do believe that Officer Ali is entitled to qualify on the first part. Now, focusing on the second part of this, in the hallway, and I heard her describe the video. To me, her description of the video. I think there are two segments. I thought there were three. Well, I'm kind of merging the pepper spray because they're both involving flight. So first and second, kind of a similar legal analysis. So I should go to the third part. With respect to the hallway, her description of the video, I think, even supports why Officer Ali should be entitled. She just started off by saying that she overheard on the video somebody asking, you got him cuffed, in a question. So it wasn't clear to the officer, and Officer Ali was not involved in doing the cuffing. It would not have been clear to a regional officer that the suspect was cuffed. And even though the suspect said, you got me cuffed, it's still not clear to an officer that he is no longer resisting. The officers are clearly struggling with him. There are three of them involved. He is being forced to yell in a loud voice, hands down, head down, which is suggestive that he is not complying, that he is still continuing to struggle. And that really gets to the heart of this, because she acknowledged that there are not a lot of cases on this point. And so you have a situation where it's not clear, where it's ambiguous or in a gray area. The Supreme Court has said officers are entitled to qualified immunity. Even if they may be mistaken in retrospect about whether or not he was resisting arrest, it was not clear at that time that he was fully complying, that he was no longer struggling. He was still struggling. They were still having to struggle with him. They were still having to yell commands to him. And in that situation, it would not be clearly established that an officer would be violating the Constitution by using a taser. So we ask the court to grant qualified immunity in its entirety for Officer Ali. Okay. Thank you. Thanks to both of you for your helpful arguments and for your briefs. We appreciate it. The case will be submitted, and the clerk may adjourn court.